**Saul ARROYO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–07–00009–CR.**

Court of Appeals of Texas, Tyler.

Feb. 29, 2008.

Discretionary Review Refused July 2 and Aug. 18, 2008.

Leslie L. McLean, for appellant.

Michael J. West, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Saul Arroyo appeals his conviction for murder. In five issues, he argues that the trial court should have dismissed the indictment, that the trial court made erroneous evidentiary rulings, and that the trial court gave an improper jury instruction. We affirm.

### BACKGROUND

Because Appellant does not contest the sufficiency of the evidence, we will briefly state the facts that support the conviction. A witness testified that she saw Appellant attacking or fighting with Joel Garcia. Garcia went into the witness's house, and Appellant left. Appellant returned a short time later with a gun and shot Garcia, killing him.

A Smith County grand jury indicted Appellant for the offense of murder. Prior to

trial, the district attorney, some of his staff, and an FBI agent had a meeting with Lucretia Goodines, Appellant's sister. The stated purpose of the meeting was to discuss the testimony Goodines could provide, but the district attorney also informed Goodines of a sentencing recommendation he was willing to make, asked her to communicate that offer to Appellant, and asked her to let him know if there was any response. Shortly after the meeting, an investigator who had been present at the meeting called Goodines. She was at the jail to deposit money in Appellant's inmate trust account, and the investigator went to the jail to serve her with a subpoena. While at the jail, the investigator arranged for Goodines to meet with Appellant.

Appellant filed a motion to dismiss the indictment, arguing that the indirect communication between the district attorney and Appellant, who was represented by counsel, violated his right to counsel. The trial court held a hearing on the matter and denied the motion.

A trial was held, and the jury found Appellant guilty as charged. Punishment was assessed at life imprisonment and a fine of $10,000. This appeal followed.

### DISMISSAL OF THE INDICTMENT

■ In his first issue, Appellant argues that the trial court should have dismissed the indictment because his right to counsel was violated. Specifically, he argues that indirect contact between the State's lawyers and a represented person creates a taint on the proceedings that can be remedied only by dismissing the indictment.

■ A trial court may dismiss an indictment when the government subverts or otherwise infringes on a represented person's right to counsel. *State v. Frye,* 897 S.W.2d 324, 331 (Tex.Crim.App.1996) (en banc). In *Frye,* employees of the district

attorney's office contacted a person who was represented by counsel and elicited information about defense strategies. *Id.* at 325–26. The court of criminal appeals concluded that this was a violation of the defendant's Sixth Amendment right to counsel. The court did not disturb conclusions by the trial court and the court of appeals that the defendant's defensive evidence and strategies were revealed as a result and that dismissal with prejudice was the appropriate remedy. *Id.* at 331.

In this case, the trial court concluded that the district attorney communicated with a person who was represented by counsel. But, Goodines, the intermediary between the State and Appellant, never again communicated with the district attorney or his staff after the initial meeting. Terming it a "probable violation" of Appellant's Sixth Amendment right to counsel, the court concluded that dismissal was not appropriate because no information had been elicited from Appellant.

■ At oral argument, Appellant conceded that the State did not learn anything about defensive strategies or anything at all from Appellant or Goodines. Rather, Appellant argued that the harm was "intrinsic" to the violation and that the relationship between him and trial counsel was irrevocably damaged. But *Frye* stands for the proposition that the remedy, which can include dismissing an indictment, must be tailored to neutralize the "taint." *Id.* at 330 ("Because of this need to sometimes neutralize or rectify these transgressions, we are of the opinion that dismissal of an indictment, although a drastic measure only to be used in the most extraordinary of circumstances, may be necessary to adequately protect a defendant's Sixth Amendment right to counsel."). Therefore, a freestanding violation of Appellant's Sixth Amendment right, if these facts constitute such a violation, does not require a

dismissal because there is no taint to be neutralized.

As to a deterioration of the relationship between Appellant and trial counsel, there is no evidence in the record to suggest that occurred. Appellant did not seek to develop such evidence prior to trial or in a motion for new trial. Cognizant of the possibility of such a deterioration, the trial court asked Appellant if he had problems with or complaints about his trial counsel's representation. He responded: "With my lawyer, is that I was never really—I don't know. You know, I plan on talking to some other attorneys to know what's really going on. I don't know nothing about this case." While not a glowing assessment of the current relationship between Appellant and trial counsel, this is not evidence of any deterioration of the attorney/client relationship resulting from the State's actions.

We conclude that the trial court's determination that there was no harm occasioned by the State's actions or taint to be removed is correct. Therefore, the trial court did not err in not dismissing the indictment. We overrule Appellant's first issue.

### LIMITATION OF CROSS EXAMINATION

■ In his second issue, Appellant argues that the trial court erred when it limited his cross examination of an eyewitness to the offense. Specifically, he argues that he should have been permitted to ask the witness about her citizenship status.

### Standard of Review

■ The constitutional right to confront witnesses, guaranteed by the Fifth Amendment to the United States Constitution, is violated when appropriate cross examination is limited. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). Nevertheless, there are several ar-

eas where cross examination may be inappropriate and, in those situations, the trial court has the discretion to limit cross examination. *Id.* at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S.Ct. 1431, 1436–37, 89 L.Ed.2d 674 (1986)). Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross examination, and parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex.Crim.App.1998). And a defendant generally has broad latitude to probe possible biases, prejudices, or ulterior motives of a witness as they may relate directly to issues or personalities in the case at hand. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). But the proponent of a vein of cross examination must show the relevancy of the questions. *Carpenter*, 979 S.W.2d at 635. In the context of a witness with pending criminal charges, the court of criminal appeals has recognized that such charges may place the witness in a "vulnerable relationship" with the State and that probing that relationship may be appropriate where the proponent can show "some causal connection or logical relationship between the pending charges and the witness's 'vulnerable relationship' or potential bias or prejudice for the State." *Id.; McDuff v. State*, 939 S.W.2d 607, 618 (Tex.Crim.App.1997) (permissible to show serious pending state charges against accomplice witness because it might have affected his testimony as a witness for the State).

### Analysis

Appellant has not shown that the witness's immigration or citizenship status was relevant or that it placed her in a vulnerable relationship with the State.

The question that drew an objection was, "By the way, are you an American citizen?" The trial court sustained an objection to that question. Later, Appellant made a bill of the witness's testimony outside the presence of the jury. The bill consisted of thirteen questions. Four questions were about another witness. Two questions were about whether the Tyler Police Department had made the witness any promises or whether she had received any "benefits or favors regarding her status of being in the United States in return for testifying in the trial." The remaining questions were devoted to determining that she was, in fact, illegally in the country and that she received food stamps, did not drive, and rented a home.

Appellant argues that these questions should have been allowed because the fact that she was in the United States illegally "when taken with the fact that her husband was back in Mexico leaving her with the children, could show and establish a bias on [her] part ... and a willingness to assist law enforcement." We disagree. If Appellant had shown that the witness's lack of citizenship or a lawful right to be in the United States created a vulnerable relationship between her and the State or tended to do so, it could have been relevant to probe the nature of the relationship and any benefits that were bestowed.[1] And the two questions about whether she had received benefits or favors from the police could have been relevant despite her denial if it were suggested or shown that she was receiving such benefits. But no such evidence was proffered.

■ Whether a person is in the United States legally or otherwise is a fact like any other. When it is relevant, it may be admitted or be the subject of inquiry. *See, e.g., Alvarado v. State,* No. 01–03–00289–

CR, 2004 WL 1233995, at *3, 2004 Tex. App. LEXIS 5019, at *8 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (mem. op., not designated for publication). Appellant has failed to show that the witness's legal status was relevant. *See Smith v. State,* 681 S.W.2d 734, 737 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd). Consequently, we hold that the trial court did not abuse its discretion when it did not allow questions about the witness's citizenship status. We overrule Appellant's second issue.

### EVIDENTIARY RULINGS

■ In his third issue, Appellant argues that the trial court erred when it allowed the State to impeach its own witness. Specifically, Appellant argues that the party who calls a witness may not impeach that witness, and that the impeachment was improper. In his fourth issue, Appellant argues that the trial court should not have allowed his bail bond contract for unrelated charges to be introduced because it was more prejudicial than probative.

### Standard of Review

■ We review a trial court's rulings on the scope of cross examination or impeachment of a witness for an abuse of discretion. *See Carroll v. State,* 916 S.W.2d 494, 498 (Tex.Crim.App.1996) (plurality opinion); *Arnold v. State,* 36 S.W.3d 542, 546 (Tex.App.-Tyler 2000, pet. ref'd). A trial court abuses its discretion if its ruling is not based on reasonable interpretations of the law and is outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim. App.1991) (op. on reh'g).

---

1. We do not understand the city police or the district attorney to play a role in the enforcement of immigration laws, and there is nothing in the record to suggest that the witness was vulnerable to the police because of her immigration status.

Texas Rule of Evidence 403 provides that relevant evidence must be excluded if it has a danger of unfair prejudice that substantially outweighs its probative value. A proper rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and, (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex.Crim.App.2005). We review a trial court's application of these factors for an abuse of discretion. *Id.*

### Analysis

A party may impeach its own witness. *See Russeau v. State*, 785 S.W.2d 387, 390 (Tex.Crim.App.1990). Appellant acknowledged this at oral argument, and we overrule this part of his third issue.

Appellant also argues that it was improper for the State to impeach Jose Arroyo with questions about his daughter Susanna Arroyo's flight to Mexico. Susanna Arroyo is Appellant's sister. Both Appellant and Susanna left the country and went to Mexico after each had participated in the killing of two different individuals. Both were convicted of those murders after having been returned to the United States. *See generally Arroyo v. State*, 239 S.W.3d 282 (Tex.App.-Tyler 2007, pet. ref'd). The State sought to ask Jose if he visited Appellant and Susanna in Mexico City. Appellant objected, outside the presence of the jury, to this line of questioning. The trial court overruled his objection.

The State then elicited from Arroyo that his daughter had been wanted for a capital murder that occurred in 1999, that she fled to Mexico, and that he visited her in Mexico and did not volunteer to law enforcement that he had seen her. The State began this line of inquiry because Jose gave testimony that seemed, to the State, to be sheltering to Appellant. The shooter drove away in Jose's truck. Jose had told the police that he had given a set of the keys to the truck to Appellant, but would not testify to that on the stand, stating that he did not know if Appellant had a set of keys. The theory behind the cross examination was that Jose was willing to go to some lengths to protect his children.

Some of the questions were germane to the issue of whether Jose would assist his children. But we agree with Appellant that several of the questions were on topics not relevant to that question.[2] Whether Jose would assist his children by not making an unsolicited call to the police about their location has a relatively low probative value. But the fact that Susanna was on the run after murdering a person and the fact she was wanted for the "stabbing and beating death of Adam Carrier" were not relevant to determining to what lengths Jose would go to assist his children and had the propensity to encourage the jury to make inferences about Appellant's conduct based on the parallels between their stories. *See Carroll*, 916 S.W.2d at 497 (Trial court may limit cross examination on irrelevant subjects.).

Even if this is error, however, it is harmless. Appellant himself injected before the jury that Susanna had been found

**2.** In its brief, the State does not offer a justification for the line of inquiry other than to establish that it is permitted to impeach its own witness. At trial, the explanation offered is as follows: "Judge, Susanna Arroyo was also on the run in Mexico. I know he visited Susanna Arroyo in Mexico. And I want to ask him about that as a bias to his testimony and also about the fact that he was visiting her, and Saul was also in Mexico City. I think it goes to his testimony and his propensity to try to protect his children with his testimony."

guilty of murder. Even the erroneous admission of evidence is harmless if the same evidence is offered by a defendant in another part of the trial. *See Saldano v. State,* 232 S.W.3d 77, 102 (Tex.Crim.App. 2007). In this case, Appellant not only reelicited each fact about Susanna's flight to Mexico during his cross examination of Jose, but he went further and informed the jury that Susanna had been convicted of murder. Arguably, this was part of a strategy to show that the children were different and is something that Appellant offered only because the State had been permitted to ask about Susanna. *See Leday v. State,* 983 S.W.2d 713, 717–18 (Tex. Crim.App.1998). But by going beyond the State's questions with a question establishing that Susanna had been convicted of murder, Appellant went beyond what was necessary to meet the issues presented and introduced an additional and unnecessary fact. Therefore, any error in allowing the questions of Jose is harmless because Appellant introduced additional facts that subsumed any harm occasioned by the initial questions. We overrule the remainder of Appellant's third issue.

■ In his fourth issue, Appellant argues that the bail bond papers were more prejudicial than probative and should not have been admitted. The authorities recovered Appellant's bond papers for unrelated misdemeanor offenses from a house adjacent to the house where the shooting occurred. The State introduced these documents arguing that they were relevant to show that Appellant lived in the home and that his decision to move to Mexico was not simply a desire for a change of scenery.

Applying the *Prible* factor analysis, we hold that the trial court did not abuse its discretion. The evidence is probative. It establishes or suggests that the dwelling next to the murder scene was Appellant's house or home base. Where he lived was a contested issue. Further, it buttresses the State's argument that Appellant's flight to Mexico was indicative of guilt. The more obligations a person has in Smith County, the less likely the person is to move to another country without a compelling reason.

On the other hand, bail bonds correlate with criminal charges, and such evidence could impress the jury in an irrational and indelible way. Most jurors probably do not have experience with bail bonds. Some would consider the matter distasteful and could draw adverse conclusions about those who had experience with bail bonds. However, the trial court redacted the offense information from the face of the bonds, and the amount of the bonds were relatively low ($1,000). A jury inclined to probe the matter would likely conclude that the bonds were for minor offenses. Because the charged offense in this case is so weighty, murder, we think it unlikely that any impression this evidence may have made on the jury would overcome their judgment. The amount of time needed to develop the evidence was low; the documents were simply introduced. And the need for the evidence was high. Placing Appellant near the scene of the shooting and explaining his flight to Mexico were two important features of the circumstantial part of the State's case. This evidence filled that role and was necessary.

We conclude that the trial court did not abuse its discretion when it allowed the State to introduce Appellant's bail bonds. We overrule Appellant's fourth issue.

## FLIGHT INSTRUCTION

In his fifth issue, Appellant argues that the trial court should not have instructed the jury that it could consider flight as evidence of Appellant's consciousness of guilt. The State responds that no such instruction was given. Appellant conceded

this at oral argument. We have examined the record, including the jury charge, and overrule Appellant fifth's issue.

## DISPOSITION

Having overruled Appellant's five issues, we *affirm* the judgment of the trial court.