# NO. 12-22-00148-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***JESUS ANGEL GOMEZ-GONZALEZ,*** ***APPELLANT*** | § | *APPEAL FROM THE 7TH* |
| ***V.*** | § | *JUDICIAL DISTRICT COURT* |
| ***THE STATE OF TEXAS,*** ***APPELLEE*** | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jesus Angel Gomez-Gonzalez appeals his conviction for sexual assault of a child. In nine issues, Appellant challenges the admission of evidence regarding his immigration status and contends that trial counsel provided ineffective assistance. We affirm.

### BACKGROUND

The victim, J.M., testified that Appellant is her uncle. When J.M. was sixteen years old, Appellant entered her bedroom and laid on the bed next to her. Appellant moved his hands toward her hips and then downward. Appellant pulled J.M.'s shorts to the side, exposed J.M.'s vagina, and digitally penetrated her vagina. J.M. testified, "[m]y body was in shock. I didn't want to move. I didn't want to say anything." Appellant left the room briefly to use the bathroom, and when Appellant returned, he put J.M. on top of him, pulled J.M.'s shorts to the side, penetrated her vagina with his penis, and shifted her weight up and down with his hands.

J.M. explained that she did not immediately tell her mother what happened because she felt "dirty and ashamed[,]" but she eventually told two friends and her boyfriend.[1] J.M. later told her mother, C.G., about the assault. C.G. and J.M.'s grandmother confronted Appellant, and J.M testified that Appellant confessed to them that he sexually assaulted J.M. J.G., Appellant's mother

---

[1] J.M.'s boyfriend and two friends testified that J.M. told them that Appellant sexually assaulted her.

and J.M.'s grandmother, told the police that Appellant "repented" and asked for forgiveness, but she also testified that she does not believe Appellant is guilty. When the police were questioning J.M. regarding another matter, J.M. told the police about Appellant sexually assaulting her. During cross-examination, J.M. explained that she eventually prepared an affidavit regarding the assault and signed it at her father's attorney's office.

J.G. testified that she told a detective that Appellant "repented" and asked for forgiveness for the hurt he caused, but she admitted that Appellant also said, "It was not my fault. [J.M.] came on top of me." J.G. explained that she believes Appellant is innocent. C.G. testified that J.M. told her that Appellant raped her. C.G. explained that when she confronted Appellant, he said, "What you're blaming me for, I'm sorry, but I didn't do it." C.G. testified that she does not believe J.M.

Detective Jennifer Stockwell of the Smith County Sheriff's Office testified that she was called to assist regarding a different incident, and she interviewed J.M. as a witness. During that interview, J.M. told Stockwell about Appellant sexually assaulting her. J.M. and her siblings were brought to the Children's Advocacy Center for forensic interviews a few days later, and Stockwell subsequently viewed the forensic interview of J.M. When Stockwell spoke with C.G., she told Stockwell that she believed J.M. After interviewing C.G., J.G., and J.M.'s father, Stockwell believed that Appellant confessed to his family. Stockwell also reviewed the affidavit J.M. prepared at her father's attorney's office. Stockwell testified that J.M.'s affidavit did not mention digital penetration.

Jennifer Subin, chief program officer for the Children's Advocacy Center of Smith County, testified that she viewed the video of J.M.'s forensic interview. Subin testified that J.M. was timid and shy, but "interviewed very well for a teenage girl." Subin explained that J.M.'s statement regarding the sexual assault was an accidental disclosure because it occurred while J.M. was being interviewed regarding another matter. When asked whether she looked for signs of deception by J.M., Subin testified, "We're always looking for those. And I didn't see any." Subin also explained that she saw no sign of coaching, fabrication, or motive to lie.

Upon learning that Appellant would testify, the prosecutor asserted that Appellant's citizenship status is relevant to "bias and a motive to lie on the stand[.]" Defense counsel responded that such evidence is "highly prejudicial and has very little probative value." Defense counsel explained that Appellant is a legal resident, but he is not a United States citizen. The trial judge ruled that he would "permit the State to ask those type of questions, as long as you don't

2

dwell on it. I'm not going to let it be a centerpiece of examination of the defendant." In addition, the trial judge determined that questioning regarding Appellant's immigration status would not be unduly prejudicial.

Appellant testified that he said he was "sorry" because C.G. was upset. Appellant denied asking for forgiveness for the hurt he caused or making any kind of confession. Appellant testified that J.M. lied, and he denied penetrating her sexual organ with his sexual organ. When asked during cross-examination whether the possibility of incarceration gave him a motive to lie to the jury, Appellant responded that he did not have such a motive. The prosecutor then asked, "What about the fact that you are currently . . ., I believe, a legal resident and not a citizen of the United States and a conviction could lead to deportation?" Defense counsel objected, stating that "[u]nder 401 and 403, I believe it's not relevant, it's highly prejudicial, and it has no probative value." The trial judge responded, "[a]s we discussed at the break, I overrule that objection." The prosecutor then repeated the question about whether the possibility of deportation is a motive for Appellant to lie, and Appellant testified, "[t]o you maybe, but not to me."

The jury ultimately found Appellant "guilty" and assessed punishment at fifteen years of confinement. This appeal followed.

## EVIDENCE REGARDING IMMIGRATION STATUS

In issue eight, Appellant argues that the trial court erred by overruling his objection and allowing the State to cross-examine him regarding his immigration status. Specifically, Appellant argues that cross-examination regarding his immigration status violated his constitutional rights and asserts that the State did not lay the proper predicate for such questioning.

### Standard of Review and Applicable Law

We review the trial court's admission of evidence for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016); *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). If the trial court's ruling is within the zone of reasonable disagreement, we will not disturb it. *Manuel*, 357 S.W.3d at 74. A trial court's erroneous admission of evidence is generally nonconstitutional error. *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); *Stovall v. State*, 140 S.W.3d 712, 718 (Tex. App.—Tyler 2004, no pet.). We must disregard any nonconstitutional error that does not affect an appellant's substantial rights. TEX. R. APP. P.

3

44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). The erroneous admission of evidence does not affect substantial rights if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the factfinder or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Substantial rights are affected if the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). In determining whether substantial rights were affected, we consider the following nonexclusive factors: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). On the other hand, with respect to constitutional error, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

**Analysis**

Appellant argues that the State did not lay the proper predicate by establishing that he is not a citizen of the United States before questioning him regarding his immigration status. To preserve error for review, a defendant must make a timely, specific objection at trial, and the issue raised on appeal must correspond to the objection made at trial. TEX. R. APP. P. 33.1(a)(1)(A); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). These rules apply to constitutional errors. *Broxton*, 909 S.W.2d at 918. As discussed above, when the State questioned Appellant regarding his immigration status, defense counsel did not object that the State did not lay the proper predicate; rather, defense counsel objected to the questioning under Rules 401 and 403 of the Texas Rules of Evidence. *See* TEX. R. EVID. 401, 403. Because Appellant's issue asserting lack of proper predicate does not comport with his trial objection, Appellant failed to preserve this argument for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Wilson*, 71 S.W.3d at 349; *Broxton*, 909 S.W.2d at 918.

Appellant correctly states in his brief that discrimination based upon race, national origin, or alienage is prohibited by the United States Constitution and the Texas Constitution, and sentencing a defendant based on his alien status violates his constitutional right to due process. *United States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir. 1991); *Flores v. State*, 904 S.W.2d 129,

4

130 (Tex. Crim. App. 1995). However, Appellant cites no authority for his argument that allowing a defendant to be cross-examined regarding his immigration status for the purpose of revealing potential bias or interest violates his constitutional rights. *See* TEX. R. APP. P. 38.1(i).

A witness may be impeached as to bias or interest. *See* TEX. R. EVID. 613(b). "A party may attack the credibility of a witness by cross-examination when it directly relates to an issue or a party so that any possible prejudices or ulterior motives of the witness may be exposed at trial." *Staley v. State*, 888 S.W.2d 45, 50 (Tex. App.—Tyler 1994, no pet.) (citing *Gannaway v. State*, 823 S.W.2d 675, 678 (Tex. Crim. App. 1991)). The issue of "[w]hether a person is in the United States legally or otherwise is a fact like any other. When it is relevant, it may be admitted or be the subject of inquiry." *Arroyo v. State*, 259 S.W.3d 831, 836 (Tex. App.—Tyler 2008, pet. ref'd). Under Texas law, a witness's immigration status must have "some logical relevance" to his testimony. *Irby v. State*, 327 S.W.3d 138, 151 (Tex. Crim. App. 2010).

As discussed above, Appellant testified that J.M. was lying about the assault, and he denied apologizing to his family members for the pain he caused. The jury was tasked with determining whether to believe J.M. or Appellant; therefore, Appellant's credibility as a witness was directly at issue. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (holding that in trials involving sexual assault, "the credibility of both the complainant and defendant is a central, often dispositive, issue."). The State presented strong evidence of Appellant's guilt, including detailed testimony from J.M., as well as testimony from Appellant's mother and Stockwell regarding Appellant's apology. Appellant was faced with a punishment range of two to twenty years of confinement and a fine of up to $10,000. *See* TEX. PENAL CODE ANN. §§ 12.33 (West 2019) (second-degree felony punishment range), 22.011(a)(2), (f) (West Supp. 2022) (sexual assault of a child is a second-degree felony). The jury assessed Appellant's sentence at fifteen years of confinement (five years less than the maximum term of confinement) and a $10,000 fine. We conclude that the trial court's decision to allow the State to cross-examine Appellant regarding his immigration status was within the zone of reasonable disagreement and did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Henley*, 493 S.W.3d at 82-83; *Manuel*, 357 S.W.3d at 74; *Johnson*, 43 S.W.3d at 4. Moreover, even if we agreed with Appellant's contention that such questioning violated his constitutional rights, which we do not, we also determine beyond a reasonable doubt that such questioning did not contribute to Appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). For all these reasons, we overrule issue eight.

In issues one, two, three, four, five, six, and nine, Appellant contends he received ineffective assistance of counsel because counsel failed to do the following: (1) object to hearsay evidence, (2) object to leading questions and non-responsive answers, (3) object to opinion testimony that lacked sufficient predicate, (4) articulate a *Daubert* objection to expert testimony,[2] (5) request limiting instructions regarding hearsay, (6) object to "undisclosed extraneous offense testimony regarding the manner of the alleged sexual abuse[,]" and (7) properly object to testimony regarding Appellant's immigration status. In issue seven, Appellant asserts that trial counsel's deficient performance in both phases of the trial "had the cumulative effect of reasonably resulting in the entry of an improper verdict of guilt and an improper sentence."

## Standard of Review and Applicable Law

In reviewing a claim of ineffective assistance of counsel, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must show that counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. An appellant must prove that "his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial." *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd).

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (establishing criteria for admissibility of expert testimony).

It is not enough for an appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Id*. An appellant must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt. *Id*.; *see also Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. An appellant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. "We engage in a 'strong presumption' that counsel's actions fell within the wide range of reasonably professional assistance." *Id* (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2052.) It is a defendant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent an opportunity for counsel to explain his actions, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Thompson*, 9 S.W.3d at 813.

## Hearsay Evidence

In issue one, Appellant argues that trial counsel provided ineffective assistance because counsel failed to object to hearsay evidence, including the introduction of J.M.'s affidavit into evidence and questioning regarding the affidavit. According to Appellant, J.M.'s affidavit "is an out-of-court statement and would be subject to" exclusion as hearsay unless the State articulated an exception to the hearsay rule. Additionally, Appellant complains of the admission of testimony from J.M.'s friends and boyfriend that J.M. told them that Appellant sexually assaulted her.

Appellant did not file a motion for new trial; therefore, trial counsel was not afforded the opportunity to explain his actions and decisions regarding the complained-of testimony. *See*

*Rylander*, 101 S.W.3d at 111. The record shows that defense counsel questioned J.M. about her failure to mention digital penetration in the affidavit. Counsel's trial strategy could have been to impeach J.M. by pointing out said inconsistency between her affidavit and her trial testimony. Moreover, counsel's decision not to object to brief testimony from J.M.'s two friends and her boyfriend could have been motivated by sound trial strategy. Appellant fails to demonstrate that the challenged actions by trial counsel could not be considered sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2052; *Tong*, 25 S.W.3d at 712. Moreover, Appellant fails to demonstrate that the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440. Because Appellant has not shown that the challenged conduct constituted ineffective assistance, we overrule issue one.

**Leading Questions and Nonresponsive Answers**

In issue two, Appellant argues that trial counsel failed to object on several occasions to the prosecutor's leading questions, as well as nonresponsive answers from the State's witnesses. "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." TEX. R. EVID. 611(c). "[D]espite this rule, it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." *Young v. State*, 10 S.W.3d 705, 713 (Tex. App—Texarkana 1999, pet. ref'd). When the record does not explain why counsel failed to object to a leading question, an appellant fails to rebut the presumption that such conduct constituted reasonable strategy. *Id*.

We agree with Appellant that some of the prosecutor's questions were leading, some of the witnesses' answers were nonresponsive, and trial counsel did not object, but we do not agree that this demonstrates counsel's ineffectiveness. Appellant does not argue that the evidence would not have been admitted if counsel objected to the State's leading questions, and we find no indication in the record that it would not. Moreover, Appellant does not argue that the nonresponsive testimony would not have come in if counsel objected. Counsel might have reasonably believed that an objection would draw more attention to the testimony. *See Johnson v. State*, No. 12-10-00110-CR, 2011 WL 1902066, at *3 (Tex. App.—Tyler May 11, 2011, pet. ref'd) (mem. op., not designated for publication). We conclude that Appellant fails to establish that trial counsel's performance was deficient for failing to object to leading questions and nonresponsive answers. *See id.*, *Young*, 10 S.W.3d at 713; *see also Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. Accordingly, we overrule issue two.

**Opinion Testimony**

In issue three, Appellant asserts that trial counsel was ineffective by failing to object to opinion testimony "that had insufficient predicate to support introduction[.]" Specifically, Appellant complains of opinion testimony from Stockwell and Subin.

As discussed above, Stockwell testified that C.G. told her she believed J.M. Stockwell also testified that after interviewing C.G., J.G., and J.M.'s father, she believed that Appellant confessed to his family. Subin testified that she saw no signs of fabrication, coaching, or motive to lie when she viewed J.M.'s forensic interview. Defense counsel was not afforded the opportunity to explain his actions. *See Rylander*, 101 S.W.3d at 111. Assuming without deciding that trial counsel's failure to object to the complained-of testimony constituted ineffective assistance, we conclude that Appellant fails to satisfy the second prong of *Strickland*. The evidence of Appellant's guilt, including J.M.'s testimony regarding the assault and C.G.'s testimony regarding Appellant's apology, was strong. Appellant has not shown a reasonable probability that, but for trial counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071; *Thompson*, 9 S.W.3d at 812. Because Appellant has not demonstrated that the alleged ineffectiveness prejudiced his defense, Appellant fails to prove ineffective assistance of counsel. *See Thompson*, 9 S.W.3d at 813. We overrule issue three.

**_Daubert_**

In issue four, Appellant asserts that trial counsel was ineffective because he did not assert a *Daubert* objection to Subin's testimony. Appellant argues that the State disclosed Subin as an expert witness, and she possessed "apparent qualifications and expertise far beyond those held by lay witnesses." Appellant notes that Subin testified, "I don't think [J.M.] was lying[]" when asked whether, based upon her training and experience, she saw "any obvious signs" of lying when viewing J.M.'s forensic interview.

As Appellant points out in his brief, expert testimony is admissible "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Expert testimony does not assist the jury if it constitutes a direct opinion on the truthfulness of a child victim's allegations. *See Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). Trial judges perform a gatekeeping function by determining the reliability, relevancy, and admissibility of scientific evidence. *Wells v. State*, 611 S.W.3d 396, 426 (Tex. Crim. App. 2020).

Appellant's brief is unclear as to what the basis of a **_Daubert_** challenge to Subin's testimony would have been or how such a challenge would have impacted his case, and he does not provide any evidence of the reasoning or strategy behind trial counsel's decision not to request a **_Daubert_** hearing. Therefore, Appellant fails to overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *See **Strickland***, 466 U.S. at 689; 104 S. Ct. at 2065; **_Thompson_**, 9 S.W.3d at 814. Because Appellant has not made the showing required for the first prong of the **_Strickland_** test, we overrule issue four.

## Failure to Request Limiting Instruction

In issue five, Appellant contends trial counsel was ineffective because he did not request a limiting instruction regarding hearsay testimony from Subin, Stockwell, J.M.'s boyfriend, and J.M.'s two friends.

Defense counsel's failure to request a limiting instruction is not, by itself, deficient performance. **_Agbogwe v. State_**, 414 S.W.3d 820, 837 (Tex. App.—Houston [1st Dist.] 2013, no pet.). An appellate court will generally assume a strategic motivation if any can possibly be imagined and will not find counsel ineffective unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. **_Bone_**, 77 S.W.3d at 833 n. 13. In the instant case, the record is silent regarding trial counsel's strategy or reasoning for not requesting a limiting instruction as to the challenged testimony. A silent record generally cannot defeat the strong presumption that counsel was effective. *See **Garza v. State***, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

Here, the record does not demonstrate that Appellant's trial counsel engaged in such outrageous conduct that no competent attorney would have engaged in it. *See **Garcia***, 57 S.W.3d at 440. Defense counsel's choice not to request a limiting instruction as to certain evidence may well be the product of trial strategy. *See **Delgado v. State***, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007) (defense counsel may decide not to ask for a limiting instruction to avoid emphasizing unfavorable evidence); **_Villalva v. State_**, No. 08-13-00219-CR, 2015 WL 4134531, at *6 (Tex. App.—El Paso July 8, 2015, no pet.) (mem. op., not designated for publication) (defense attorney may reasonably decide, as part of trial strategy, not to highlight unfavorable testimony by requesting limiting instruction). On this silent record, we cannot conclude that counsel's performance fell below an objective standard of reasonable professional assistance. *See **Bone***, 77

10

S.W.3d at 833 n. 13. Accordingly, because Appellant has not satisfied the requirements of the first prong of the *Strickland* test, we overrule issue five.

**Extraneous Offense Testimony**

In issue six, Appellant argues that trial counsel provided ineffective assistance by failing to object to J.M.'s testimony regarding digital penetration and failing to seek a limiting instruction. Appellant asserts that because the indictment only alleged penetration of J.M.'s vagina with Appellant's penis, the digital penetration evidence constituted an "undisclosed extraneous offense."

Extraneous offense evidence may be admissible as same transaction contextual evidence when crimes are so intermixed, blended, or connected that they constitute an indivisible criminal transaction. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (citing *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The jury is entitled to know the relevant facts and circumstances surrounding the charged offense. *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Moreover, a limiting instruction is not required for same transaction contextual evidence. *Glockzin v. State*, 220 S.W.3d 140, 151 (Tex. App.—Waco 2007, pet. ref'd).

J.M. testified that Appellant penetrated her vagina with his finger, left the room briefly to use the bathroom, and penetrated her vagina with his penis when he returned. As discussed above, an appellate court will generally assume a strategic motivation if any can possibly be imagined and will not find counsel ineffective unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Bone*, 77 S.W.3d at 833 n. 13. Trial counsel could have reasonably concluded that J.M.'s testimony regarding digital penetration was admissible as same transaction contextual evidence and that a limiting instruction was not required. *See Glockzin*, 220 S.W.3d at 151 (holding that when indictment alleged that Appellant caused the child victim to touch his genitals, evidence that Appellant rubbed child victim's vaginal area, was drinking the same night, and may have infected child victim with genital warts was admissible as same transaction contextual evidence); *Prible*, 175 S.W.3d at 731; *Wesbrook*, 29 S.W.3d at 115;. The silent record does not demonstrate that trial counsel engaged in such outrageous conduct that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440. Therefore,

Appellant has not shown counsel's performance was deficient.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.  We overrule issue six.

**Immigration Status**

In issue nine, Appellant argues that trial counsel provided ineffective assistance by failing to properly object to evidence regarding his immigration status, and he asserts that the introduction of such evidence probably resulted in rendition of an improper verdict and sentence.  We concluded above that trial counsel's failure to object to the State's failure to lay the proper predicate for questioning him about his immigration status did not preserve that argument for our review.  Nevertheless, the record also does not demonstrate that, if counsel had objected on that basis, the State could not have introduced such evidence; that is, had defense counsel objected, the State likely would have simply asked appropriate questions to lay a proper predicate.

As discussed in detail in our analysis of issue eight, a witness may be impeached regarding bias or interest, and the issue of whether a person is in the United States legally is a fact like any other, and such evidence may be admitted when it is relevant.  *See* TEX. R. EVID. 613(b); *Arroyo*, 259 S.W.3d at 836.  Because Appellant testified that he did not assault J.M. and that she lied, Appellant's credibility as a witness was directly at issue, and evidence regarding his immigration status was relevant to show a possible motive for him to lie.  *See Hammer*, 296 S.W.3d at 561.  On this silent record, Appellant fails to demonstrate that defense counsel engaged in such outrageous conduct that no competent attorney would have engaged in it.  *See Garcia*, 57 S.W.3d at 440.  Therefore, he likewise fails to satisfy the first prong of the *Strickland* test.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Furthermore, the State presented strong evidence of Appellant's guilt, including J.M.'s testimony and testimony from C.G. regarding Appellant's apology to his family after the assault.  Appellant therefore also fails to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712.  Because Appellant fails to satisfy either prong of *Strickland*, we overrule issue nine.

**Cumulative Effect**

In issue seven, Appellant asserts that the cumulative effect of his trial counsel's deficient performance resulted in an improper guilty verdict and an improper sentence.  Although multiple errors may cumulatively rise to the point of being harmful, there is "no authority holding that non-

errors may in their cumulative effect cause error." ***Chamberlain v. State***, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see also **Gamboa v. State***, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009). As to each of Appellant's issues, we concluded above that counsel's performance either was not deficient or, assuming without deciding that it was deficient, did not prejudice Appellant's defense. Considering the totality of counsel's representation, we conclude that Appellant fails to demonstrate a reasonable probability that, but for counsel's alleged errors, the result would have been different. *See **Strickland***, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; ***Tong***, 25 S.W.3d at 712. Because Appellant fails to show that trial counsel's performance prejudiced his defense, he fails to meet his burden of proving counsel's ineffectiveness. *See **Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712. Accordingly, we overrule issue nine.

## DISPOSITION

Having overruled each of Appellant's issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered August 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2023**

**NO. 12-22-00148-CR**

**JESUS ANGEL GOMEZ-GONZALEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-1096-20)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*